## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ORMA BUIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1181 (ABJ) |
| | ) | |
| JACQUELINE A. BERRIEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Orma Buie has brought an action against her employer, the Equal Employment Opportunity Commission ("EEOC"), alleging that the agency[1] discriminated against her in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act") by failing to offer her a reasonable accommodation for her disability, retaliating against her for requesting reasonable accommodations, and subjecting her to a hostile work environment. Defendant has moved to dismiss or, in the alternative, for summary judgment. Def.'s Mot. to Dismiss or for Summ. J. [Dkt. # 15] ("Def.'s Mot."); Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 15] ("Def.'s Mem."). Because the Court finds that plaintiff has failed to state a plausible claim that defendant retaliated against her or that defendant subjected her to a hostile work environment, the Court will grant defendant's motion in part and dismiss those claims. The Court also finds that defendant is entitled to partial summary judgment on plaintiff's failure to

---

1       Plaintiff named six individuals in her complaint:  Jacqueline A. Berrien, the former Chair of the EEOC, and EEOC employees Nicholas M. Inzeo, Michael J. Dougherty, Kendra Duckworth, Reuben Daniels, and Mary Burks.  As discussed below, none of these individuals is an appropriate defendant in this action.  Accordingly, the Court will dismiss each of these defendants and replace them with the only proper party:  Jenny R. Yang, the current Chair of the EEOC.  For that reason, the Court will refer to "defendant" in the singular form throughout this memorandum opinion.

accommodate claim, except to the extent that the claim is based on the denial of plaintiff's request that she be permitted to telework, because a genuine dispute of material fact exists as to whether that accommodation was reasonable or would impose an undue hardship on defendant.  So that portion of plaintiff's claim survives defendant's motion and will move forward.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the amended complaint, except where noted.[2]  Plaintiff suffers from lung disease and chronic asthma.  Am. Compl. [Dkt. # 7] at 2.  Her condition makes her highly sensitive to air quality issues.  *See generally id.*  Plaintiff was employed as a GS-12 level Senior Investigator in the EEOC's Charlotte, North Carolina District Office.  *Id.* at 2, 5.  In December 2010, plaintiff was promoted to a GS-13 level Program Analyst position in the Washington, D.C. Field Office, and she relocated to Washington with her disabled mother.  *Id.* at 2.  However, shortly thereafter, plaintiff had to return her mother to Charlotte because the care

---

2       In ruling on a Rule 12(b)(6) motion to dismiss, the court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C. Cir. 1997).  That final category encompasses "public records," *Kaempe v. Myers,* 367 F.3d 958, 965 (D.C. Cir. 2004), including an EEOC decision. *See, e.g., Williams v. Chu,* 641 F. Supp. 2d 31, 34–35 (D.D.C. 2009) (taking judicial notice of the dates established in EEOC decision for purposes of ruling on motion to dismiss).  Defendant attached the underlying EEOC decision in this case as an exhibit to its motion. *See* Ex. 9 to Def.'s Mot. [Dkt. # 15-9] ("EEOC Decision").  The Court takes notice of that decision for the limited purpose of verifying the dates in plaintiff's amended complaint, which appear to be off by one year.  For example, the amended complaint states that plaintiff was promoted to the Washington office in December 2011 and began work there in January 2012, Am. Compl. [Dkt. # 7] at 2, but plaintiff's opposition and the EEOC Decision place these events in December 2010 and January 2011, respectively.  Pl.'s Opp. to Def.'s Mot. [Dkt. # 29] at 7; EEOC Decision at 3.  Because plaintiff's opposition was drafted with the assistance of counsel, and because the EEOC Decision is an official administrative record, the Court will rely on those documents for the dates of the relevant incidents in recounting the facts of this case.

center in Washington was unable to accommodate her mother's medical needs.  *Id.* at 3.  Plaintiff

visited her mother on most weekends and worked four ten-hour days at the Washington office.  *Id.*

### A.      Plaintiff's Accommodation Requests

When plaintiff began work at the Washington office in January 2011, she contacted her

direct supervisor, Mary Burks, to request that defendant accommodate her disability by either

providing her with a private office equipped with an air purifier or offering her the option to work

remotely from her home (telework).  *Id.* at 2.  Michael Dougherty, the office's Director of Field

Operations, informed Burks that plaintiff would not be permitted to telework and that there were

no private offices immediately available for her use.  *Id.* at 2–3.  Plaintiff was assigned to sit in an

open-floor cubicle, and she found the uncovered space to be too large to permit her air purifier to

be effective in alleviating her symptoms.  *Id.* at 3.

In February 2011, plaintiff contacted Kendra Duckworth, the office's Disability

Coordinator, and presented her accommodation needs.  *Id.*  Plaintiff underwent surgery related to

her condition in April, and afterwards, she contacted Duckworth via email, phone, and in person

to inquire about the status of the accommodation requests.  *Id.* at 3.  Upon her return to work in

May, plaintiff provided medical information to Duckworth regarding her condition.  *Id.* at 4.

According to plaintiff, Duckworth continued to tell her that "Mr. Dougherty was still looking for

an office."  *Id.*  Nevertheless, by June, plaintiff had concluded that she would not receive an

accommodation in Washington.  *Id.*

### B.      Plaintiff's Harassment and Retaliation Allegations

Plaintiff claims that, upon her arrival in Washington, her supervisor Mary Burks "began to

retaliate" against her because plaintiff went home on weekends to see her mother and because she

needed accommodations.  *Id.* at 3.  Plaintiff states that by March 2011:

> Mary Burks had stop [sic] communicating with me.  She would yell at me when I asked her questions or needed job related assistance.  She told employees that she was not my supervisor and did want to train me.  She said she was not a supervisor and did not want the job.  She had become rude.  She informed others that it was a shame that my family would not help with my mother.  Ms[.] Burks was upset because I chose to go see my mother instead of tour Washington with her on the weekends.

*Id.*

Plaintiff alleges that when she returned from her surgery in May, "[t]he harassment escalated." *Id.* at 4.  She states that Burks would walk away if plaintiff tried to approach her, and that Burks slammed her office door in plaintiff's face.  *Id.*  Plaintiff also alleges that after she became aware that she would react to the moth balls that Burks used to store her clothing, Burks "purposely came into [plaintiff's] cubical [sic] to force [her] lungs to shut down." *Id.*  Plaintiff maintains that she informed Dougherty and Duckworth of Burks's behavior, but that no effective action was taken.  *Id.*

### C.     Plaintiff's Transfer Back to Charlotte

In June 2011, six months after her arrival in Washington, plaintiff requested a transfer back to the Charlotte office.  *Id.*  She states that she told her supervisors that she felt "forced" to do so in order to obtain a private office with an air purifier and so that she could telework as needed.  *Id.*  She also informed them that her mother had been placed in hospice care.  *Id.*

Although plaintiff is a certified mediator and there was a GS-13 Mediator position open in the Charlotte office, plaintiff was not transferred to that position.  *Id.* at 5.  Plaintiff claims that Duckworth and the Director of the Charlotte office, Reuben Daniels, decided not to place her in that position because of her disability.  *Id.*  In August 2011, plaintiff was transferred instead to a GS-12 Investigator position in the Charlotte office.  *Id.*  Plaintiff claims that she was assigned more duties than her predecessor, that she was held to higher production standards, and that the

appointment was in fact a demotion.  *Id.*  Plaintiff continued to work as an Investigator until March 2012, when her disability retirement was approved, and she retired.  *Id.*

Plaintiff filed a formal EEOC complaint in September 2011, claiming that defendant subjected her to discrimination, retaliation, and a hostile work environment based on her disability. EEOC Decision at 1.  An administrative judge denied her claim on January 7, 2013.  *Id.* at 14.

## II.   Procedural History

Plaintiff, proceeding *pro* se, filed a complaint in August 2013 alleging that defendant had discriminated against her and failed to accommodate her disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").[3]  Compl. [Dkt. # 1].  In December 2013, plaintiff filed an amended complaint asserting claims under the Rehabilitation Act for failure to accommodate, retaliation, and hostile work environment.  Am. Compl. at 2.  She seeks $312,000 in back pay for the three years plaintiff claims that she would have worked beyond her retirement date, and she asks that her retirement annuity be adjusted to reflect that change.  *Id.* at 5.  She also seeks $20,000 in damages for her suffering caused by defendant's alleged discrimination.  *Id.*

On July 2, 2014, defendant filed the present motion to dismiss, or in the alternative, for summary judgment.  Def.'s Mot.; Def.'s Mem.  As plaintiff was still proceeding *pro se* at that time, the Court entered a *Fox/Neal* Order advising plaintiff that her failure to respond to the motion

---

3     After noting that the ADA does not apply to the United States or to its agencies, and that plaintiff's claims therefore must be dismissed, Judge Hogan "afford[ed] plaintiff an opportunity to file an amended complaint" within thirty days.  Mem. Op. and Order (Aug. 1, 2013) [Dkt. # 3]. After more than three months, when plaintiff failed to file an amended complaint or to request an extension, Judge Kollar-Kotelly dismissed the case without prejudice.  Mem. Op. (Nov. 15, 2013) [Dkt. # 4]; Order (Nov. 15, 2013) [Dkt. # 5].  Plaintiff moved to reopen the case on December 27, 2013, claiming that she had mailed an amended complaint to the Clerk of Court in compliance with the August 2013 order, but that it was not docketed.  Mot. to Reopen Case [Dkt. # 6].  On February 7, 2014, Judge Walton granted plaintiff's motion and ordered the Clerk to docket the amended complaint, which plaintiff had attached to her motion.  Order (Feb. 7, 2014) [Dkt. # 8]; Am. Compl.

could result in the dismissal of her case. *Fox/Neal* Order [Dkt. # 18]. On September 1, 2014,

plaintiff, who was represented by counsel by that time, filed her opposition to defendant's motion.

Pl.'s Opp. to Def.'s Mot. [Dkt. # 23], reformatted at [Dkt. # 29] at 15 ("Pl.'s Opp.").[4]

## STANDARD OF REVIEW

### I.      Motion to Dismiss

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must "treat the complaint's

factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be

derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C.

Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C.

Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). This is

especially true for a *pro se* complaint, which "is to be liberally construed in favor of the plaintiff."

*Jackson v. Fed. Bureau of Prisons*, 657 F. Supp. 2d 176, 178 (D.D.C. 2009), citing *Haines v.

Kerner*, 404 U.S. 519, 520 (1972). But the Court need not accept inferences drawn by the plaintiff

if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept

plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim

is facially plausible when the pleaded factual content "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility

---

4       When the Court cites to "Pl.'s Opp.," it will be referring to plaintiff's properly formatted
opposition [Dkt. # 29]. However, the Court will cite to the exhibits attached to plaintiff's first-
filed opposition [Dkt. # 23], as they were not refiled with the reformatted opposition.

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 566. A pleading must offer more than "'labels and conclusions'" or a "'formulaic recitation of the elements of a cause of action,'" *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## II. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). But the mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248.

In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). The non-movant may not, however, rest upon the allegations or denials in its pleadings, but must instead establish more than "[t]he mere existence

of a scintilla of evidence" to support its position.  *Anderson*, 477 U.S. at 252.  A court will "not

accept bare conclusory allegations as fact."  *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997);

*see also District Intown Props Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 878 (D.C. Cir.

1999) ("[T]he court must assume the truth of all statements proffered by the non-movant except

for conclusory statements lacking any factual basis in the record.").

## ANALYSIS

The amended complaint does not set out discrete counts, but a review of the complaint in

light of the arguments plaintiff raises in her opposition to defendant's motion indicates that

plaintiff is seeking to assert three causes of action against the EEOC and a series of individuals:

that defendant failed to accommodate her disability in violation of the Rehabilitation Act, Am.

Compl. at 2; Pl.'s Opp. at 17–26; that defendant retaliated against for her accommodation requests,

Am. Compl. at 2; Pl.'s Opp. at 26–29; and that plaintiff's immediate supervisor subjected her to a

hostile work environment based on her disability.[5]  Am. Compl. at 2; Pl.'s Opp. at 29–31; *see also*

---

5    Plaintiff claims for the first time in her opposition that defendant repeatedly requested
unnecessary medical information from plaintiff and that defendant intentionally delayed plaintiff's
accommodation requests, both in violation of the Rehabilitation Act.  *See* Pl.'s Opp. at 23–26.
Even if the amended complaint is construed broadly, it is devoid of any allegation that defendant
requested medical information from plaintiff, let alone that it did so repeatedly and with the intent
to delay or deny her an accommodation.  "[S]ubsequent written submissions do not afford the
plaintiff the opportunity to 'allege additional facts' necessary to defeat a motion to dismiss."
*Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 106 n.30 (D.D.C. 2010), quoting *Henthorn
v. Dep't of Navy*, 29 F.3d 682, 687–88 (D.C. Cir. 1994).  So the Court will not consider the factual
allegations in the opposition concerning unlawful requests for medical information when assessing
the sufficiency of the complaint.
     As for the claim that defendant intentionally and unreasonably delayed fulfilling plaintiff's
accommodation requests, the amended complaint contains some facts that could be construed to
support such an allegation.  *See* Am. Compl. at 2–4 (stating that plaintiff first requested an
accommodation in January 2011 and had not yet received any accommodation by the time she
requested the transfer back to Charlotte in June 2011).  The Court will address these allegations as
part and parcel of plaintiff's failure to accommodate claim, as plaintiff has provided no authority
that would permit a separate cause of action on that basis.

Pl.'s Opp. at 15 ("Ms. Buie filed an Amended Complaint asserting that Defendants' [sic] violated the Rehabilitation Act, Retaliation, and Hostile Work Environment.").

As a preliminary matter, defendant is correct that the individuals named in the amended complaint – Jacqueline A. Berrien, Nicholas M. Inzeo, Michael J. Dougherty, Kendra Duckworth, Reuben Daniels, and Mary Burks – are not proper subjects of this action.  *See* Def.'s Mot. at 1 n.1; *see also* Def.'s Reply to Pl.'s Opp. [Dkt. # 26] ("Def.'s Reply") at 1 nn.1–2.  In her opposition, plaintiff did not address defendant's argument on this point and she therefore has conceded the issue.  *See, e.g.*, *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004); *see also Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (treating argument as conceded where the plaintiff failed to oppose argument raised by the defendant).

And even if plaintiff had addressed defendant's argument, "[t]he only proper defendant in a Title VII suit . . . is the head of the department, agency, or unit in which the allegedly discriminatory acts transpired."  *Hackley v. Roudebush*, 520 F.2d 108, 115 n.17 (D.C. Cir. 1975) (internal quotation marks and citations omitted); *see also* 42 U.S.C. § 2000e-16(c) (in a civil action under Title VII, "the head of the department, agency, or unit, as appropriate, shall be the defendant").  Similarly, "[s]ince the Rehabilitation Act draws from the procedures of Title VII, the only proper defendant [in a Rehabilitation Act suit] is the head of the department, agency or unit." *Paegle v. Dep't of Interior*, 813 F. Supp. 61, 64 n.2 (D.D.C. 1993) (internal quotation marks and citations omitted); *accord Norris v. Salazar*, 885 F. Supp. 2d 402, 413 (D.D.C. 2012).  For that reason, defendants Inzeo, Dougherty, Duckworth, Daniels, and Burks will be dismissed.

In addition, the Court takes judicial notice of the fact that Jacqueline A. Berrien is no longer the Chair of the EEOC, and that she has been replaced by Jenny R. Yang.  *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (stating that a court may take "judicial notice of facts on the public record" in deciding a motion to dismiss) (internal quotation marks omitted).  Therefore, the Court will dismiss Ms. Berrien from this case and substitute Ms. Yang, in her official capacity as Chair of the EEOC, as the proper defendant.  *See Cheney v. U.S. Dist. Court for D.C.*, 541 U.S. 913, 917 (2004) ("[F]ederal law provides for automatic substitution of the new officer when the originally named officer has been replaced."), citing Fed. R. Civ. P. 25(d) (providing for automatic substitution of officer's successor as a party when "a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending.").

I.      **Plaintiff's failure to accommodate claim partially survives defendant's motion.**

Plaintiff first alleges that defendant violated the Rehabilitation Act when it failed to offer her a reasonable accommodation for her disability while she was working in the Washington office.  Am. Compl. at 2; Pl's Opp. at 17–26.  Specifically, plaintiff claims that defendant refused to permit her to telework several days per week, or to provide her with a private office and air purifier, despite the fact that both options had previously been available to her in the Charlotte office.  Am. Compl. at 2–4; Pl.'s Opp. at 19–21.  Additionally, plaintiff argues that the accommodation that was eventually provided – the transfer back to Charlotte, where she could once again have a private office and the option to telework – was not reasonable because it involved a demotion to a GS-12 position, when there was a vacant GS-13 Mediator position open in Charlotte for which plaintiff was qualified.  Am. Compl. at 5; Pl.'s Opp. at 21–23.

"The Rehabilitation Act of 1973 governs employee claims of handicap discrimination against the Federal Government.  Its basic tenet is that the Government must take reasonable

affirmative steps to accommodate the handicapped, except where undue hardship would result."[6]
*Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993).  To establish a *prima facie* case of failure to
accommodate, a plaintiff must show (1) that he or she was an individual who had a disability
within the meaning of the statute; (2) that the employer had notice of the disability; (3) that with
reasonable accommodation the employee could perform the essential functions of the position;
and (4) that the employer refused to make such accommodations.  *Brown v. Snow*, 407 F. Supp.
2d 61, 67 (D.D.C. 2005), citing *Scarborough v. Natsios*, 190 F. Supp. 2d 5, 19 (D.D.C. 2002); *see
also Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007).

If a plaintiff establishes a *prima facie* case of failure to accommodate, then it is up to the
employer to demonstrate that the requested accommodation would have imposed an undue burden
on its business; "the ultimate burden however, remains with the plaintiff." *Faison v. Vance-Cooks*,
896 F. Supp. 2d 37, 49 (D.D.C. 2012), citing *Barth*, 2 F.3d at 1185–86 (explaining that the three
part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792
(1973), does not apply to reasonable accommodation claims; such claims should be tested through
the "application of traditional burdens of proof").  To survive summary judgment, then, a plaintiff
must show that the accommodation he requested was reasonable and that the defendant failed to
provide it.  An accommodation is "reasonable" if it enables the employee to fulfill all essential
functions of his job.  *See Woodruff*, 482 F.3d at 527.  "In this context, 'consideration shall be given
to the employer's judgment as to what functions of a job are essential.'"  *Id.*, quoting 42 U.S.C. §
12111(8).  "The employee has the burden of identifying reasonable accommodations, and the

---

6  "'Because of the similarities between the Rehabilitation Act and the ADA, cases
interpreting either are applicable or interchangeable.'" *Alston v. Washington Metro. Area Transit
Auth.*, 571 F. Supp. 2d 77, 81 (D.D.C. 2008), quoting *Scarborough v. Natsios*, 190 F. Supp. 2d 5,
19 n.10 (D.D.C. 2002).  For that reason, the Court cites to Rehabilitation Act and ADA cases
interchangeably throughout this opinion.

agency has the burden of showing undue hardship." *Graffius v. Shinseki*, 672 F. Supp. 2d 119,

126 (D.D.C. 2009), citing *Chinchillo v. Powell*, 236 F. Supp. 2d 18, 23–24 (D.D.C. 2003).

### A.      Plaintiff has alleged sufficient facts to state a claim that defendant failed to provide her with a reasonable accommodation for her disability.

The Court finds that, while it is a close call, plaintiff has done just enough to state a

plausible claim that defendant failed to accommodate her disability.  In the amended complaint,

plaintiff alleges that she asked to telework or to be placed in a private office with an air purifier in

January 2011, but that she was told that she could not telework and that no office was available.

Am. Compl. at 2–3.  She also states that she continued to request updated information on the status

of her accommodation requests throughout the spring of 2011 but that she "was never given an

accommodation in Washington."  *Id.* at 3–5.  Finally, she argues that, when she was transferred

back to the Charlotte office, she should have received the GS-13 Mediator position.  *Id.* at 5.

Defendant maintains that plaintiff fails to state a plausible claim because defendant

accommodated plaintiff's disability when it facilitated her return back to the Charlotte office,

where telework and a private space were available, and because plaintiff's other desired

accommodations were either not reasonable or not feasible.  Def.'s Mem. at 10–12.  But the

reasonableness of plaintiff's requests and of the solution she was eventually offered are questions

of fact that are inappropriate for resolution on a motion to dismiss.  *See, e.g.*, *Hodges v. District of

Columbia*, 959 F. Supp. 2d 148, 155 (D.D.C. 2013) (finding that the plaintiff stated a claim for

failure to accommodate where the defendant offered the plaintiff an accommodation but "the

parties dispute[d] the reasonableness of the accommodation offered").  Construing plaintiff's *pro

se* complaint broadly and granting her all the reasonable inferences to which she is entitled, then,

the Court finds that the claim survives the motion to dismiss under Rule 12(b)(6) and it must be

assessed under Rule 56.

**B.** **Defendant is entitled to summary judgment on plaintiff's failure to accommodate claim, except insofar as that claim is based on the denial of plaintiff's request to telework.**

After reviewing the record evidence, the Court finds that plaintiff has not put forth sufficient facts to overcome defendant's motion for summary judgment on her failure to accommodate claim, except with regard to her request to telework.  So the case will proceed, but it will be narrowed significantly.

Plaintiff argues that she requested three reasonable accommodations which defendant denied:  (1) the option to telework several days a week; (2) a private office with an air purifier; and (3) a transfer to the vacant GS-13 Mediator position in the Charlotte office.  Pl.'s Opp. at 19–23.  For plaintiff's claim to survive summary judgment, plaintiff must demonstrate that these accommodations were reasonable – that is, that they would have enabled her to perform her essential employment functions – and that defendant failed to provide them.  It is then up to defendant to show that the accommodations would have caused an undue burden.  *See Graffius*, 672 F. Supp. 2d at 126.

Because plaintiff's claim is based on these three separate accommodation requests, which raise distinct legal and factual issues, the Court will analyze each request separately.  *See, e.g.*, *id.* at 127–31.

### 1.    Telework

Plaintiff first claims that she was denied a reasonable accommodation when defendant refused to permit her to telework while in Washington.  Pl.'s Opp. at 19–20.  The D.C. Circuit has recognized that the Rehabilitation Act "demands a great deal from federal employers in the way of accommodation.  Indeed, in appropriate cases, [it] requires an agency to consider work at home" as a potential accommodation.  *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994), citing *Langon v.*

*HHS*, 959 F.2d 1053 (D.C. Cir. 1992) (holding that an agency must consider accommodating a computer programmer with multiple sclerosis by allowing her to work at home).

Defendant argues that telework was not a reasonable accommodation because plaintiff could not complete her job duties remotely: as a newly-hired Program Analyst, plaintiff had to be present in the office to receive assignments and on-the-job training, and her position required her to review onsite files that could not be accessed remotely. Def.'s Mem. at 11–12; Def.'s Reply at 13–14. Defendant has offered sworn testimony from plaintiff's supervisors stating that plaintiff was needed at the office "to receive assignments and on-the-job training from Agency managers." Decl. of Kendra Duckworth, Ex. 4 to Def.'s Mot. [Dkt. # 15-4] ("Duckworth Decl.") ¶ 7; *see also* Decl. of Mary Burks, Ex. 3 to Def.'s Mot. [Dkt. # 15-3] ¶¶ 7–9, 14–17 (describing the essential functions of plaintiff's position and the on-the-job training that required her presence in the office).

Plaintiff disputes those assertions. She maintains that there was no formal training for her position, and that she received all of the necessary on-the-job training from Burks in January 2011. Pl.'s Opp. at 19–20. While plaintiff acknowledges that she could not access the onsite files from home, Dep. of Orma Buie, Aug. 8, 2012, Ex. 1 to Def.'s Mot [Dkt. # 15-1] ("Buie Dep.") 36:6–19, she takes the position that her work could have been completed remotely by computer and with the assistance of other employees who were present in the office. Pl.'s Opp. at 19–20 (claiming that plaintiff could have obtained any onsite materials or financial documents remotely by "contact[ing] the field office, provid[ing] the file number, and get[ting] the information needed to complete the task"); Buie Dep. 33:12–20; 36:6–19. According to plaintiff, she could have called Burks in the Washington office and had her pull the relevant files and transmit the information they contained to her by telephone. Buie Dep. 36:6–19.

It may be that plaintiff's solution will ultimately be found to be unworkable, disruptive, or otherwise unreasonable, but given the factual nature of the inquiry and the limited record before the Court, the question is not ripe for resolution as a matter of law at this time. The parties disagree about whether plaintiff needed to be physically present at the Washington office to receive training and to perform her job responsibilities fully, and whether a telework accommodation would have imposed an undue hardship on defendant. And defendant has not yet demonstrated that there is no genuine dispute of material fact concerning the reasonableness of the telework option. *See Woodruff*, 482 F.3d at 528 (reversing district court's grant of summary judgment on the plaintiff's failure to accommodate claim based on the defendant's termination of the plaintiff's telecommute agreement when evidence "suggest[ed]" that the plaintiff] "did not have to be physically present in the office"); *see also Langon*, 959 F.2d at 1060 (finding that a genuine dispute of material fact existed sufficient to preclude summary judgment on the plaintiff's failure to accommodate claim based on the denial of her telework request where the plaintiff disagreed with employer regarding her position's "length of the deadlines and the need for frequent face-to-face contacts"). Thus, defendant's motion for summary judgment is denied without prejudice as to plaintiff's failure to accommodate claim, insofar as that claim is based on the denial of her telework request.

## 2.     Private Office and Air Purifier

Plaintiff also claims that defendant failed to accommodate her disability when it refused to provide her with a private office and an air purifier in Washington. Am. Compl. at 2–3; Pl.'s Opp. at 20–21. Plaintiff insists that defendant "fail[ed] to provide any legitimate reason(s) why [her] request for a private office with an air purifier was denied and delayed," especially in light of the fact that plaintiff was previously provided with a private office in Charlotte. Pl.'s Opp. at 21. But the facts related to this aspect of her claim are not in dispute.

The Court concludes that no reasonable juror could find that plaintiff's request for a private office was actually denied. The undisputed evidence reveals defendant's on-going attempts to locate a private office for plaintiff, and it shows that those efforts were cut short by plaintiff's own request in June to be transferred back to the Charlotte office.

The reasonable accommodation selection process "is 'a flexible give-and-take' between employer and employee 'so that together they can determine what accommodation would enable the employee to continue working.'" *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014), quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005). "'[N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability.'" *Id.*, quoting *Sears*, 417 F.3d at 805. Therefore, "to establish that her request was 'denied,' [plaintiff] must show either that [defendant] in fact ended the interactive process or that it participated in the process in bad faith." *Id.*

Plaintiff contends that defendant "failed to take any action on any requests" for a reasonable accommodation. Pl.'s Opp. at 25. But with regard to plaintiff's request for a private office, that assertion is contradicted by the record. Plaintiff first contacted Kendra Duckworth, the Washington office's Disability Coordinator, in February 2011 with her accommodation requests. Duckworth Decl. ¶ 4; Email from Orma Buie to Kendra Duckworth, Feb. 16, 2011, Ex. R to Pl.'s Opp. [Dkt. # 23-18]. Duckworth passed this request on to Dougherty in March 2011, and because there were no offices immediately available, the two attempted to locate a vacant office for plaintiff in other agency departments. Duckworth Decl. ¶ 8; Aff. of Nicholas Inzeo, Ex. 6 to Def.'s Mot. [Dkt. # 15-6] 3:111–126; *see also* Buie Dep. 32:3–7 (acknowledging that plaintiff was told in March that "Mike is looking for you an office [sic]"). Defendant continued to attempt to locate an office for plaintiff throughout the spring and early summer of 2011. *See* Duckworth Decl. ¶ 8;

Reasonable Accommodation Notes Summary, Ex. S to Pl.'s Opp. [Dkt. # 23-19] ("Accommodation Notes") at 1; Email from Kendra Duckworth to Orma Buie, May 31, 2011, Ex. BB to Pl.'s Opp. [Dkt. # 23-28]. The record indicates that at some point, Burks even offered plaintiff her own office, but that plaintiff turned down the offer because plaintiff's condition was worse when she was in that office. Buie Dep. 56:1–11; Aff. of Mary Burks, Ex. 7 to Def.'s Mot. [Dkt. # 15-7] 2:45–58. Defendant continued to search for an office for plaintiff in Washington even after plaintiff requested the transfer to Charlotte, and it ultimately located potential offices in mid-July 2011. Duckworth Decl. ¶ 8. But before plaintiff could be placed in a vacant office, she returned to Charlotte. *Id.*

As was true of the defendant in *Ward*, defendant's participation in the interactive accommodation process relating to plaintiff's request for a private office "bore all the hallmarks of good faith." 762 F.3d at 34. Plaintiff has done nothing to controvert that evidence or to show that defendant participated in the process in bad faith. To challenge the proposition that defendant was actively searching for a private office for her throughout the spring and summer of 2011, plaintiff offers only her own unsupported assertion that "offices [we]re all over the place," and defendant arbitrarily denied them to her because "they just didn't want to accommodate [her]." Buie Dep. 56:12–13, 58:6–19. Without more, no reasonable juror could find that defendant's good faith efforts to locate an office for plaintiff constituted a denial of plaintiff's reasonable accommodation request sufficient for liability under the Rehabilitation Act.

Plaintiff points out that even if her request for a private office was not formally denied, defendant did not locate a suitable office in the six or seven months that elapsed between the time the request was made and when plaintiff sought a transfer instead. Pl.'s Opp. at 21. She contends that the delay itself constitutes a denial of a reasonable accommodation. *Id.* at 21, 23–25.

"[T]here are certainly circumstances in which a 'long-delayed accommodation could be considered' unreasonable and hence 'actionable.'" *Mogenhan v. Napolitano*, 613 F.3d 1162, 1168 (D.C. Cir. 2010), quoting *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007).  But the delay here is far shorter than the periods that courts in this Circuit and elsewhere have found to be so unreasonable as to constitute a failure to accommodate as a matter of law.  *See, e.g.*, *Mayers*, 478 F.3d at 368 (three-year delay); *Faison*, 896 F. Supp. 2d at 62 (more than three-year delay); *see also Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1262–64 (10th Cir. 2001) (finding that less than six-month delay in accommodating the plaintiff's sinus problems did not amount to a failure to accommodate where the defendant took steps to assess and carry out the accommodation request and ultimately made the changes the employee requested).[7]

For these reasons, the Court finds that there is no genuine dispute of material fact with regard to plaintiff's failure to accommodate claim based on her request for a private office, and it will grant defendant's motion for summary judgment on that aspect of plaintiff's claim.

### 3.  Transfer to GS-13 Mediator Position

Finally, plaintiff contends that she was denied a reasonable accommodation when defendant declined to transfer her to a vacant GS-13 Mediator position in the Charlotte office and instead offered her the GS-12 Investigator job.  Pl.'s Opp. at 21–23.  It is well recognized that "'[a]n employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation.'" *Aka v. Wash. Hosp. Ctr.*, 156

---

7       The cases upon which plaintiff relies in support of her unreasonable delay argument are non-precedential and not binding on this Court.  And in any event, they are distinguishable since they involved longer delays than the one at issue here, and they were decided at the motion to dismiss stage.  *See* Pl.'s Opp. at 24, citing *Krocka v. Riegler*, 958 F. Supp. 1333, 1342 (N. D. Ill. 1997) (eight-month delay); *Cohen v. Montgomery Cnty. Dep't of Health & Human Servs.*, 817 A.2d 915, 922 (Md. 2003) (seventeen-month delay).

F.3d 1284, 1305 (D.C. Cir. 1998), quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996). Defendant's decision not to transfer plaintiff to the Mediator position, and its decision to offer her the GS-12 Investigator position instead – a position which plaintiff accepted – cannot constitute a denial of a reasonable accommodation simply because plaintiff would have preferred a different or superior assignment.

And in any event, "[t]o survive summary judgment, a plaintiff must proffer evidence from which a reasonable fact finder could determine . . . that with reasonable accommodation the disabled employee could perform the essential functions of her position." *Porter v. Jackson*, 410 F. App'x 348, 349 (D.C. Cir. 2010), citing *Barth*, 2 F.3d at 1186–87; *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999). Defendant has put forth evidence indicating that plaintiff could not perform the essential functions of the GS-13 Mediator position because that position required her presence in the office, and it involved constant interaction with the public, which would have exacerbated plaintiff's breathing problems. Duckworth Decl. ¶¶ 19–23, 25, 27; Accommodation Notes at 1 ("[Duckworth] discussed [her] concerns that [plaintiff] can not [sic] perform the essential functions of a mediator b/c it requires direct and immediate contact with the public in a confined space."). Plaintiff has offered no evidence to show that she could perform the essential elements of the Mediator position, even with an accommodation. *See* Pl.'s Opp. at 21–23. And her own self-serving and speculative assertion that she could have performed the job "as long as her environment is controlled" by prescreening applicants, *id.* at 12, is insufficient to satisfy her burden on this issue. *See, e.g.*, *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008) ("Summary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements."); *Fields v. Office of Johnson*, 520 F. Supp. 2d 101, 105 (D.D.C. 2007) (noting that "[s]elf-serving testimony does not create genuine issues of

material fact" at summary judgment). Plaintiff has therefore failed to show that a transfer to the GS-13 Mediator position in particular was a reasonable accommodation, and the Court will also grant defendant's motion for summary judgment on that aspect of plaintiff's failure to accommodate claim.

## II.     Plaintiff has failed to state a claim for retaliation.

Plaintiff's second ground for relief is that defendant retaliated against her in response to her requests for a reasonable accommodation for her disability. Am. Compl. at 2; Pl.'s Opp. at 26–29. The Court finds that plaintiff has failed to allege facts sufficient to state a plausible claim of retaliation, and it will grant defendant's motion dismiss this count pursuant to Rule 12(b)(6).

Claims of retaliation under the Rehabilitation Act are analyzed under the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Woodruff*, 482 F.3d at 528–29; *Kersey v. Wash. Metro. Area Transit Auth.*, 586 F.3d 13, 16 (D.C. Cir. 2009). Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of retaliation. *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003), citing *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002). "To establish a *prima facie* case of retaliation under the Rehabilitation Act, a plaintiff must show that (1) he engaged in statutorily protected activity, (2) the employer was aware of the activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Duncan v. Washington Metro. Area Transit Auth.*, 214 F.R.D. 43, 50 (D.D.C. 2003), citing *McDonnell Douglas*, 411 U.S. at 802; *McGill v. Munoz*, 203 F.3d 843, 845 (D.C. Cir. 2000).

Defendant does not contest that plaintiff engaged in protected activity when she asked her employer to accommodate her disability. But it argues that plaintiff did not suffer an adverse

employment action, and that she has not alleged facts sufficient to imply a causal connection between any purported adverse action and her protected status.  Def.'s Mem. at 12–14.

A materially adverse action is one that results in significant harm or hardship, such as affecting the plaintiff's "position, grade level, salary, or promotion opportunities," *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009), quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008), and that "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006).  Plaintiff's allegations do not meet this standard, because the actions she relies upon are not sufficiently adverse to support her retaliation claim.

Plaintiff identifies two categories of events that she alleges were retaliatory:  the harassment she experienced at the hands of her supervisor, Mary Burks, and the circumstances surrounding her requests for reasonable accommodations and her transfer back to the Charlotte office.  Am. Compl. at 3–5; Pl.'s Opp. at 27–29.

With respect to Burks, plaintiff complains that she excluded her from assignments, slammed a door in her face, told others that she did not want to train or supervise her, told plaintiff that "a fifth grader could do [her] job," and both yelled at and ignored her.  Am. Compl. at 3–4; Pl.'s Opp. at 28.  These allegations do not constitute materially adverse employment actions.  The law is clear that "[p]urely subjective injuries, such as dissatisfaction with a reassignment, or public humiliation or loss of reputation, are not adverse actions."  *Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002) (internal citations omitted).  Rather, "the threshold is met when an employee 'experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact

could find objectively tangible harm.'"  *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006),

quoting *Forkkio*, 306 F.3d at 1131.  Applying that standard, the Court finds that plaintiff has simply

recounted purely subjective injuries or disagreements with no consequences that cannot qualify as

adverse employment actions.  *See, e.g.*, *Baloch*, 550 F.3d at 1199 (noting that "sporadic verbal

altercations or disagreements do not qualify as adverse actions for purposes of retaliation claims"),

citing *Burlington*, 548 U.S. at 68.

The remainder of the employment actions upon which plaintiff relies also cannot be

classified as materially adverse.  First, plaintiff cites to defendant's delay in granting plaintiff's

telework or private office accommodation requests.  Am. Compl. at 3–5; Pl.'s Opp. at 28–29.  But

this was the subject of plaintiff's failure to accommodate claim, and so it does not supply grounds

for a separate retaliation claim.  *See, e.g.*, *Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013)

(dismissing the plaintiff's retaliation claim for failure to allege any materially adverse employment

action and noting that "if the denial of a request for accommodation could itself support a claim of

retaliation based on the request, then every failure-to-accommodate claim would be doubled").

Further, defendant's decision not to offer plaintiff the GS-13 Mediator position – a position

for which defendant claims plaintiff was not qualified, Def.'s Mem. at 5 – does not constitute a

materially adverse employment action.  "[G]enerally lateral transfers, or the denial of them, could

not be considered adverse employment actions," except where a lateral transfer is not "truly

lateral" because it involves greater benefits or responsibilities.  *Stewart v. Ashcroft*, 352 F.3d 422,

427 (D.C. Cir. 2003), citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999).  The amended

complaint offers no facts that would permit the inference that a transfer from GS-13 Program

Analyst to the GS-13 Mediator position was anything but a lateral move.

And in any event, plaintiff has not alleged facts sufficient to show that she was qualified for that position, with or without a reasonable accommodation, as is required to state a claim of retaliation for failure to promote. *See, e.g.*, *Nails v. England*, 311 F. Supp. 2d 116, 123–24 (D.D.C. 2004) (finding that the plaintiff failed to make out a *prima facie* case of retaliation where she offered no evidence that she was qualified for positions she sought); *see also Aka*, 156 F.3d at 1305 ("[T]he ADA does not require that a disabled employee be reassigned to a position for which he is not otherwise qualified."). Thus, plaintiff has failed to allege facts sufficient to show that defendant's decision not to grant her the Mediator position constituted a materially adverse action.

Finally, plaintiff's transfer back to the Charlotte office and her reassignment to the GS-12 Investigator position with "additional duties" and "higher production standards," Am. Compl. at 4–5, is also not an adverse employment action. It is true that "'reassignment with significantly different responsibilities' . . . generally indicates an adverse action." *Forkkio,* 306 F.3d at 1131, quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). However, plaintiff herself requested the transfer to Charlotte in June 2011 and she accepted the position change – including the demotion from GS-13 to GS-12 – in August. Am. Compl. at 4–5. Plaintiff's application for and acceptance of the transfer and the new position cast doubt on whether this change qualifies as an adverse employment action, and certainly undermine her claim that the transfer was somehow caused by defendant in retaliation for her protected activity. *See, e.g.*, *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876–78 (7th Cir. 1999) (holding that employee's voluntary position downgrade was not adverse employment action where she requested reassignment and there was no evidence that her work conditions were so intolerable as to constitute a constructive demotion).

Even if plaintiff's willing transfer to Charlotte and voluntary demotion to the GS-12 position could be considered materially adverse employment actions, plaintiff has failed to allege

facts sufficient to show a causal connection between those events and her protected activity.  In assessing causation in the retaliation context, courts must ask whether there was "'an unbroken connection between the wrongful act and the injury,'" or whether there was "'some new and independent cause intervening between the wrong and the injury.'"  *Breeden v. Novartis Pharm. Corp.*, 646 F.3d 43, 53 (D.C. Cir. 2011), quoting *Hicks v. United States*, 511 F.2d 407, 420 (D.C. Cir. 1975).  Here, plaintiff cannot escape the fact that she initiated the transfer back to Charlotte and willingly accepted the GS-12 Investigator position, and she has failed to allege any facts that would show that the transfer was somehow motivated by retaliatory animus.  *See* Pl.'s Opp. at 29.  Indeed, the complaint tends to show that the transfer provided a means to supply plaintiff with the private office and telework days that she had requested.  Am. Compl. at 4.

Because the Court finds that plaintiff has failed to allege that she suffered a materially adverse employment action as a result of her protected activity, or that a causal connection exists between any alleged adverse action and her disability, her retaliation claim fails and the Court will grant defendant's motion to dismiss that count.

## III.   Plaintiff has failed to state hostile work environment claim.

Plaintiff's third theory is that the behavior by Mary Burks that formed the basis of the retaliation claim also created a hostile work environment.[8]  *See* Am. Compl. at 2–4; Pl.'s Opp. at 30 (describing plaintiff's claim as "a claim for a hostile work environment created by Ms. Burks").  The Court finds that plaintiff has failed to allege facts sufficient to state a claim for hostile work environment, and it will grant defendant's motion to dismiss this count.

---

8      The D.C. Circuit has "assume[d], without deciding, that the Rehabilitation Act creates a cause of action for hostile work environment."  *Kuraner v. Mineta*, No. 00-5416, 2001 WL 936369, at *1 (D.C. Cir. July 10, 2001).  Following that precedent, the Court will assume that such a claim exists and will proceed to address the sufficiency of the amended complaint's allegations.

To state a hostile work environment claim, a plaintiff must allege facts sufficient to show that the "workplace is permeated with discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal citation and quotation marks omitted). "In determining whether an actionable hostile work environment claim exists, [courts] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002), quoting *Harris*, 510 U.S. at 23. As another court in this District put it, in assessing such a claim, "[t]he key terms . . . are 'severe,' 'pervasive,' and 'abusive.'" *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003).

### A.   The conduct of which plaintiff complains was not sufficiently severe or pervasive to create a hostile work environment.

Even granting plaintiff the benefit of all inferences to which she is entitled, the Court cannot find, based on the frequency, severity, and pervasiveness of Burks's actions, that plaintiff's allegations overcome the "demanding" legal standard for hostile work environment claims. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The incidents plaintiff describes are more akin to "the ordinary tribulations of the workplace" than to conduct that is so extreme or abusive as to cause "a change in the terms and conditions of employment." *Id.* (internal quotation marks omitted).

Regarding her allegations that Burks yelled at plaintiff, told others that she did not want to supervise plaintiff, or commented that a fifth grader could do the job, plaintiff does not allege that these incidents were physically threatening or humiliating, and she gives the Court no basis for inferring that Burks's behavior was anything more than offensive to plaintiff. *See Harris*, 510

U.S. at 21 ("[M]ere utterance of an . . . epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment . . . .") (internal quotation marks and citations omitted); *see also Richard v. Bell Atl. Corp.*, 209 F. Supp. 2d 23, 35 (D.D.C. 2002) ("[R]ude comments, unjust criticism, and stressful working conditions[] amount to ordinary tribulations of the workplace that [are] insufficient as a matter of law for a hostile environment case.") (internal quotation marks omitted).  And as for the claim that Burks excluded plaintiff from assignments, courts generally reject hostile work environment claims based on such work-related actions by supervisors.  *Wade v. District of Columbia*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011); *see also Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("[T]he removal of important assignments . . . [cannot] be characterized as sufficiently intimidating or offensive in an ordinary workplace context.").

As for plaintiff's allegation that Burks, whose clothing had been preserved with moth balls, "purposely" came into plaintiff's cubicle "to force [her] lungs to shut down," Am. Compl. at 4, this event, standing alone, is not sufficient to state a hostile work environment claim.  "Except in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).  The amended complaint does not allege that Burks approached plaintiff's cubicle frequently or regularly, or even more than once.  *See* Am. Compl. at 4.  And plaintiff does nothing to explain this allegation further in her opposition to defendant's motion.  *See generally* Pl.'s Opp. at 29–31.[9]  Because the "very nature" of a hostile work environment claim "involves repeated conduct," *Morgan*, 536 U.S. at

---

9    Plaintiff does mention the moth ball incident in her statement of material facts, *see* Pl.'s Resp. to Def.'s Statement of Material Facts [Dkt. # 25-1] ¶ 18, but because the Court reaches this particular allegation at the motion to dismiss stage, it does not consider materials related to defendant's motion for summary judgment, including plaintiff's statement of disputed facts, in resolving the motion to dismiss this claim.

115, without any allegation that Burks approached plaintiff's cubicle on multiple occasions with the intent to exacerbate her symptoms, the Court cannot find that this one incident constitutes conduct that is sufficiently severe or pervasive so as to cause a hostile work environment.

Even if the Court were to infer from a generous reading of the amended complaint that Burks did approach plaintiff's cubicle on more than one occasion, plaintiff still has not provided facts sufficient to permit an inference that this conduct "alter[ed] the conditions of [plaintiff's] employment and create[d] an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (internal quotation marks and citations omitted). The amended complaint is devoid of any allegations that Burks meant to cause plaintiff harm, that her conduct was "physically threatening or humiliating," or that it "unreasonably interfere[d] with [plaintiff's] work performance." *Morgan*, 536 U.S. at 116. Without more, the Court cannot find that the amended complaint plausibly alleges facts sufficient to show that Burks's conduct satisfies the severe or pervasive threshold.[10]

---

[10] While few courts have addressed similar factual circumstances at the motion to dismiss stage, at least two courts on a motion for summary judgment have found comparable conduct to be insufficiently severe and pervasive to meet the demanding hostile work environment threshold. In *Hizer v. South Bend Tribune*, for example, the plaintiff claimed that she was subjected to a hostile work environment on the basis of her asthma when "three times, a scented product was 'poured' on the hallway carpet outside her door, and . . . the scent made her ill." 31 F. Supp. 3d 986, 1002 (N.D. Ind. 2014). The court granted summary judgment on the claim because, among other reasons, "[t]here was no physical threat or humiliation" to the plaintiff, and while the plaintiff claimed that the scent made her ill, she did not "indicate that she was unable to perform her job because of it." *Id.* And in *Hawkins v. Counseling Associates*, the plaintiff alleged that "other employees would deliberately wear stronger scents, spray substances within close proximity to [the plaintiff's] work area, burn multiple scented candles, and use hairspray in the closest women's restroom available to her" to exacerbate her allergies. 504 F. Supp. 2d 419, 429–30 (E.D. Ark. 2007). Again, the court found that the conduct was not sufficiently severe or pervasive to support a hostile work environment claim. *Id.* at 432.

**B.     Plaintiff has not alleged facts sufficient to support a reasonable inference that the allegedly harassing behavior was related to her disability.**

Plaintiff has also failed to allege facts sufficient to demonstrate a causal connection between the hostile behavior and her disability.  "While a plaintiff is not required to plead a *prima facie* case of hostile work environment in the complaint, the alleged facts must be able to support such a claim."  *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 78 (D.D.C. 2007), citing *Sparrow*, 216 F.3d at 1114.  Where the evidence offered by a plaintiff "bears no connection" to her protected class, it "cannot support of a hostile work environment claim."  *Harris v. Wackenhut Servs., Inc.*, 419 F. App'x 1, 2 (D.C. Cir. 2011); *see also Williams v. Dodaro*, 576 F. Supp. 2d 72, 92 (D.D.C. 2008) ("[W]orkplace harassment must be related to . . . disability to arise to an unlawful hostile work environment.").

In her opposition, plaintiff does not respond to defendant's argument that she has failed to put forth any evidence linking the allegedly hostile behavior to her disability, other than to recognize that defendant raised that point in its motion to dismiss.  *See* Pl.'s Opp. at 29–31.  On that ground alone, the Court could find that plaintiff has conceded the causation issue and that her hostile work environment claim fails.  *See Hopkins*, 284 F. Supp. 2d at 25; *see also Tax Analysts*, 117 F.3d at 610.

But even if plaintiff had not conceded this point, she has failed to allege any facts to connect Burks's conduct to her protected status.   Plaintiff claims that "Burks began to retaliate because . . . [plaintiff] needed and [sic] accommodation," Am. Compl. at 3, but offers no facts or other allegations whatsoever in support of that conclusory assertion.  Such "[t]hreadbare recitals" fail to meet the plausibility standard set forth in *Iqbal*.   556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."); *see also Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415, 420 (D.C. Cir. 2009) (plausibility standard

requires that "'a complaint must contain sufficient factual matter,' alleged in non-conclusory terms, 'to state a claim to relief that is plausible on its face.'"), quoting *Iqbal*, 556 U.S. at 678.

And plaintiff's claim that Burks harassed her because of her disability or her accommodation requests is belied by facts offered in the amended complaint and in plaintiff's opposition. Plaintiff acknowledges that she and Burks "have known each other for over twenty (20) years," Pl.'s Opp. at 7, and that "Burks was aware of [her] disability prior to [plaintiff's] coming to the Washington office." Am. Compl. at 2. And plaintiff admits that Burks was the one who "encourage[d]" her to apply to the position in Washington and that Burks even went so far as to write a recommendation letter on plaintiff's behalf. Pl.'s Opp. at 7. Finally, as plaintiff herself puts it, she believed that "Burks began to retaliate because [plaintiff] went home on the weekends to see [her] mother," and that "Burks was upset because [plaintiff] chose to go see [her] mother instead of tour Washington with her on the weekends." Am. Compl. at 3. These facts do not in any way tend to show that the supposed harassment occurred due to plaintiff's disability, and rather, imply that the incidents were part of a personal dispute between the two women – the type of "ordinary tribulations of the workplace" that cannot form the basis an actionable hostile work environment. *Faragher*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

The only conduct set forth in the complaint that could possibly be construed as connected to plaintiff's disability is the claim that Burks "purposely came into [plaintiff's] cubical [sic] to force [her] lungs to shut down," in reaction to the scent of moth balls. Am. Compl. at 4. But as discussed above, this single statement in the amended complaint, without more, is insufficient to state a plausible hostile work environment claim. And plaintiff has not alleged any facts to connect this conduct to any other discriminatory actions that were related to her disability in any event. *See, e.g.*, *Nurriddin*, 674 F. Supp. 2d at 94 (dismissing the plaintiff's hostile work environment

claim because the plaintiff only sought "to transform his challenges to discrete acts of alleged discrimination or retaliation . . . into a hostile work environment claim by combining those events with a series of ordinary workplace difficulties").

Because the Court finds that plaintiff has failed to set forth facts sufficient to allege that defendant subjected her to a hostile work environment on the basis of her disability, the Court will grant defendant's motion to dismiss that claim.

## CONCLUSION

The Court finds that plaintiff has failed to allege facts sufficient to show that defendant retaliated against her for requesting reasonable accommodations for her disability, or that defendant subjected plaintiff to a hostile work environment, and it will therefore grant defendant's motion to dismiss those claims.  Further, the Court finds that defendant is entitled to judgment as a matter of law on plaintiff's failure to accommodate claim based on her requests that she be provided with a private office with an air purifier or that she be transferred specifically to the vacant Mediator position.  However, the Court will deny defendant's motion without prejudice as to plaintiff's failure to accommodate claim related to the denial of her request for telework, because a genuine dispute of material fact exists as to whether that accommodation was reasonable or would have imposed an undue hardship on defendant.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 27, 2015